1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VICKY CORNELL, individually, and in her capacity as the Personal Representative of the Estate of Christopher John Cornell a/k/a Chris Cornell, | No. 2:21-cv-192 |
| Plaintiffs, | COMPLAINT |
| v. | |
| SOUNDGARDEN, a purported Washington General Partnership; KIM A. THAYIL; MATT D. CAMERON; HUNTER BENEDICT SHEPHERD; SOUNDGARDEN RECORDINGS, LLC, a Delaware limited liability company; STAGE MUTHA FAKIR, INC., a Washington corporation, and SG PRODUCTIONS, INC., a Washington corporation, LOUD LOVE MUSIC, an entity of unknown origin, | |
| Defendants. | |

Plaintiff Vicky Cornell, in her capacity as the Personal Representative of the Estate of Christopher John Cornell and individually (collectively, "Plaintiffs"), hereby files Plaintiffs' Complaint against defendants Soundgarden, Kim Thayil, Matt Cameron, Hunter Benedict Shepherd, Soundgarden Recordings, LLC ("SG Recordings"), Stage Mutha Fakir, Inc. ("SMF"),

COMPLAINT –1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

SG Productions, Inc. ("SG Productions"), and Loud Love Music ("LLM") (collectively, "Defendants").

## I.   INTRODUCTION

1.      This action has been necessitated by the self-serving and heartless actions of the remaining members of the band Soundgarden, who are seeking to rob from their former bandmate, Chris Cornell ("Chris"), his wife ("Vicky"), and their minor children, Chris' legacy and life's worth, which has made them millions of dollars.  The band members have knowingly offered only an infinitesimal fraction of the true worth of Chris' interest in Soundgarden and certain related entities by making a ludicrously low offer.  And, they know it.  Before making their absurd offer, Soundgarden had previously received an independent third-party offer from a leading music investor for *multi-millions* more (even though that offer covered only recorded music and did not include any other Soundgarden assets).  Despite having this offer in hand, the band members offered Chris' wife and minor children a pittance.  In fact, the band's offer is so low that it even falls shy of the royalties that Vicky received for a single year (2018) from a single revenue source (Soundgarden's master recordings).

2.      This is not the first time that the band members have sought to deprive Chris' minor children of the hard-earned fruits of his labor and talent.  The band has already been sued once by Vicky for refusing to pay monies that they admit are owed to her and Chris' minor children.[1]  Now, Vicky, who wanted to avoid this action, has been forced to regrettably file suit based on the band's continuing pattern of unconscionable misconduct.

3.      A Seattle native and architect of grunge, Chris was one of the original founding members of Soundgarden.  Chris wrote the vast majority of the band's songs – over 73% – and singularly authored the band's biggest hits: *Black Hole Sun* and *Spoonman*.  Known as one of the

---

[1] That related lawsuit – recently transferred from the Southern District of Florida to, and currently pending in, this Court as Case No. 2:20-cv-01218−RAJ−MAT – concerns disputes between Plaintiffs and Soundgarden over: rights to certain vocal recordings created by Chris; Soundgarden's lack of authority to use Chris' name and likeness; and certain payments indisputably owed to Plaintiffs.

COMPLAINT –2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

best voices in music history, Chris' octave-scaling and vocal-belting brought commercial success to Soundgarden, other bands (*Temple of the Dog* and *Audioslave*), and his own solo career.  Chris died tragically on May 17, 2017 while on tour with Soundgarden, leaving his property – including his intellectual and personal property rights – to Vicky for the benefit of their two minor children.[2]

4.     This case relates to, and seeks a judicial valuation of, Chris' interest in Soundgarden (the band owned by the partnership of the same name) and certain related entities, including SG Recordings, SMF, SG Productions, and LLM (collectively, the "Soundgarden Related Entities").

5.     Consistent with the Washington Revised Uniform Partnership Act, RCW 25.05 (the "Act"), Plaintiffs demanded that Defendants buy out Chris' interests in Soundgarden and the Soundgarden Related Entities.  In response, after making various assumptions, deductions, and adjustments, Defendants offered to purchase Chris' interest in Soundgarden – for which Chris was both the face and the creative lifeblood – and the Soundgarden Related Entities for the villainously low figure of **less than $300,000**.

6.     In an attempt to justify their contemptuous offer, Defendants utilized a valuation that is inconsistent with industry custom and standard and riddled with methodological flaws, discounts valuable partnership assets, and disregards that, when an iconic performer of Chris' stature dies, the value of the band increases.  Just as Defendants previously refused Vicky's probate requests for an inventory of Chris' personal belongings and for an exercise of the statutory right of access to Partnership materials, Defendants have steadfastly refused requests for any information to support their preposterous offer.

7.     Moreover, Defendants made their offer of less than $300,000 despite having ***already*** received an (opening) offer from the leading music investor (the "Investor"), which offered to purchase only Soundgarden's master recordings for ***sixteen million dollars***.  Stated differently, even though the Investor had, based on its independent evaluation, made an arms-length offer of sixteen million dollars for just Soundgarden's master recordings (and not any other

---

[2] Vicky is also the primary source of financial support for Chris' first daughter from a prior marriage.

COMPLAINT –3

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Soundgarden assets), Defendants deemed less than $300,000 a fair offer for Chris' interest in all of Soundgarden's assets.

8.      In response to Defendants' disingenuous offer, on December 17, 2020, Vicky counter-offered defendants Kim Thayil ("Thayil"), Matt Cameron ("Cameron"), Hunter Benedict Shepherd ("Shepherd") (collectively, the "Surviving Band Members") four million dollars each – a total of **twelve-million dollars** (U.S. $12,000,000.00) – for their collective interests in Soundgarden and the Soundgarden Related Entities (collectively, the "Soundgarden Partnership").

9.      On December 29, 2020, Defendants summarily rejected Vicky's twelve-million dollar offer, noting that the Surviving Band Members have no interest in selling their interests in the Soundgarden Partnership "because these interests represent their creative life's-work" – a statement that both overreaches (because neither Cameron nor Shepherd were original members of Soundgarden) and overlooks (because the vast majority of the band's works – over 73% – were authored by Chris and because Chris' interest in the Soundgarden Partnership also represents Chris' "creative life's work").

10.     In a final attempt to resolve this matter without judicial intervention (and without the need for yet another litigation), Vicky offered the Surviving Band Members seven million dollars each – a total of **twenty-one million dollars** ($21,000,000.00) – for their collective interests in the Soundgarden Partnership.  Moreover, Vicky's offer expressly noted that, if the Surviving Band Members were willing to share the underlying information, her twenty-one million dollar offer may well increase further.  The Surviving Band Members rejected the twenty-one million dollar offer and, once more, refused to share the underlying data.

11.     The Surviving Band Members' rejection of an offer of seven million dollars for each of their individual interests underscores the unreasonableness of Defendants' insulting offer for Chris' interests in the Soundgarden Partnership.

12.     Because the parties cannot agree on a value for Chris' interest in Soundgarden or the Soundgarden Related Entities, Plaintiffs seek a judicial determination of the buyout price in

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

accordance with the Act.

## II.      PARTIES, JURISDICTION, AND VENUE

### A.      The Parties

13.      Plaintiff Vicky Cornell is Chris' wife and the Personal Representative of the Estate of Christopher John Cornell.  Vicky married Chris in 2004, is the mother of their two minor children, and is the primary source of financial support for Chris' first daughter from a prior marriage.  Vicky presently resides in Florida, is domiciled in Florida, and intends to remain domiciled in Florida.  Vicky does not reside in Washington, nor is she domiciled there.

14.      Plaintiff the Estate of Christopher John Cornell ("Estate") is Chris' estate.  Chris was an internationally-renowned musician, singer, and songwriter, the writer of Soundgarden's greatest hits, the Band's lead vocalist, a rock-and-roll legend rated among the greatest vocalists in the history of rock, a pop culture icon, and, in the words of *Rolling Stone*, a "grunge god."  Chris' last will and testament bequeathed his property, including his intellectual and personal property rights, to Vicky for the benefit of her and their two children.  The Estate has been probated in Florida, as Chris was domiciled in Florida at the time of his passing.

15.      Defendant Soundgarden is a Washington General Partnership, with its principal place of business in the State of Washington ("Partnership").  The Partnership was never memorialized in a signed written agreement.  Soundgarden is also the name of the band ("Band").

16.      Formed in 1984, the Band originally consisted of Thayil (guitar), Hiro Yamamoto (bass), and Chris (drums and vocals).  In 1985, Scott Sundquist joined the Band as a drummer to enable Cornell to concentrate on the Band's vocals.  Cameron joined the Band in 1986, after Sundquist departed.  Shepherd joined years later, after the Band had earned the distinction of being the first grunge band to sign with a major label.

17.      The Soundgarden Partnership claims to own many of the Band's intellectual property rights and many of its musical works.  The Soundgarden Partnership, either directly or through authorized agents, sells, markets, promotes, streams, licenses, distributes, and otherwise

COMPLAINT –5

exploits the Band's musical works through a variety of media.

18.     Defendant Thayil is an original Band member.  Thayil was the lead guitarist and played in the Band from 1984 until the Band dissolved in 1997,[3] and then again when the Band reformed in 2010 to the present date.  Thayil is a partner in the Partnership and is domiciled in Washington.

19.     Defendant Cameron became the Band's full-time drummer in 1986, and played with the Band through the balance of its first stint,[4] and then again from 2010 to the present date – when his schedule permitted and did not conflict with his obligations to the band *Pearl Jam*. Cameron is a partner in the Partnership and is domiciled in Washington.

20.     Defendant Shepherd formally joined the Band in 1990 as a bassist, replacing original Band member, Hiro Yamamoto.  Shepherd was a Band member from 1990 through 1997, and has been with the Band continuously since it regrouped in 2010.  Shepherd is a partner in the Partnership and is domiciled in Washington.

21.     Defendant SG Recordings is a Delaware LLC that owns the master recordings contained on the album *King Animal* released on Mercury, including the tapes, hard drives, cassettes, test pressings, and other assets related to these recordings.  Chris was a twenty-five percent (25%) member of SG Recordings.

22.     Defendant SMF is a Washington corporation that owns and manages assets related to the touring and merchandising activities of the Band.  Chris owns twenty-five percent (25%) of the stock of SMF.

23.     Defendant SG Productions is a Washington corporation, inactive since July 2017. Chris owns twenty-five percent (25%) of the stock of SG Productions.[5]

---

[3] One of the driving forces behind the Band's break-up was the Surviving Band Members' attempt to deprive Chris of his rights in works that Chris singularly or disproportionately created.

[4] Cameron and Shepherd took a brief hiatus from the Band in the early 90s to launch a garage rock band, *Hater*.

[5] Although Defendants SG Recordings, SMF, SG Productions, and LLM are not subject to the Act, those entities have, through their course of conduct, effectively consented to the Act's processes, including a judicial valuation.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

24.     On information and belief, Defendant LLM is an entity that is owned by the Partnership, is domiciled in Washington, owns the compositions of many of the Band's works, and receives mechanical, public performance and other royalties, among other things.  Chris owns twenty-five percent (25%) of LLM.

**B.     Jurisdiction and Venue**

25.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because, at all pertinent times, Vicky has been domiciled in Florida; the Estate, which has been probated in Florida, is domiciled in Florida; Defendants are domiciled in Washington or Delaware; and the amount in controversy exceeds $75,000.00, exclusive of attorneys' fees and costs.

26.     Venue is appropriate in this District because all or most of the Defendants reside in this District.

27.     All conditions precedent to the prosecution of this action have been satisfied, fulfilled, extinguished, waived, or otherwise executed.

### III.     DETERMINATION OF VALUE OF CHRIS' INTEREST IN SOUNDGARDEN (RCW 25.05.250)

28.     Chris was a partner in the Partnership, along with Cameron, Thayil, and Shepard, until he became dissociated on May 18, 2017 – the day of his passing.  RCW 25.05.225(7)(a). Chris' dissociation from the Partnership did not result in, or require, a dissolution and winding up of the Partnership business.  RCW 25.05.250(1).

29.     The Partnership was never memorialized in a signed written agreement.  As a consequence, the Washington Revised Uniform Partnership Act, RCW 25.05 *et seq.* governs the post-dissociation rights and obligations of the parties.

30.     At no time did Chris ever forfeit or waive his statutory rights under RCW 25.05.250 to receive a buyout payment from the Partnership upon his dissociation.

31.     The Partnership is obligated to pay the Estate a buyout payment equal to the amount that would have been distributable to Chris under RCW 25.05.330(2) if, on the date of dissociation,

COMPLAINT –7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the assets of the Partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern without Chris, and the Partnership were wound up as of that date, plus accrued interest on such buyout payment.  RCW 25.05.250(2).

32.     After Chris' tragic death, the Surviving Band Members never made any attempt to buy out the Estate's interests in the Partnership, despite acknowledging in writings exchanged among themselves that they were obligated to do so.  The Surviving Band Members' decision to not buy out Chris' interests was ostensibly motivated by the realization that the value of Chris' interest in the Partnership was many millions of dollars, far in excess of the amount that they recently offered – a sum so paltry that it does not amount to the royalties that Vicky received from Soundgarden's master recordings in 2018 alone.

33.     On July 23, 2020, the Estate formally demanded a buyout payment of the Estate's interest in the Partnership and the Soundgarden Related Entities pursuant to RCW 25.05.250.

34.     On October 20, 2020, the Partnership and Soundgarden Related Entities tendered their buyout proposal to the Estate, offering to purchase the Estate's entire interest in the Soundgarden Partnership (*i.e.*, the entirety of what had been left behind by Chris after his death in both the Partnership and the Soundgarden Related Entities) for a one-time payment of less than $300,000.  *See* RCW 25.05.250(5).  That offer – which drastically undervalued the Estate's interest in the Soundgarden Partnership – is arbitrary, vexatious, and not in good faith.  *See* RCW 25.05.250(9).

35.     The vexatious nature of Defendants' bad-faith buyout offer is illustrated by the fact that, at time that they made their lowball offer, Defendants had ***already*** received an offer from the Investor for sixteen million dollars just for Soundgarden's master recordings and not for any other Soundgarden assets, such a merchandise and future touring revenue.

36.     Further illustrating the bad-faith nature of the buyout offer is Defendants' failure to account for, among other things, either the longstanding and tremendous success of the Band and its catalog of master recordings, the value of Soundgarden's intellectual property, or the continued

COMPLAINT –8

widespread public interest in the Band.  Defendants' bad-faith offer failed to properly ascribe value to obvious valuation factors.  For example, the buyout offer fell far shy of the royalties that Vicky received for a single year (2018) from a single revenue source (Soundgarden's master recordings).  A good faith valuation would – as the Investor's offer did – account for the full value of those master recordings.  Defendants' buyout offer ascribed little to zero value to future merchandise and tour earnings despite the increase of widespread public interest in the Band since Chris' passing, as is often the case when a musician of Chris' iconic stature passes away.  A good-faith valuation would account for the significant revenues to be earned from the Band's merchandise sales and account for the lucrative, nostalgia-fueled projects that follow the passing of rock and roll icons – *e.g.*, future tours using a replacement lead singer (as *Queen* did by substituting Adam Lambert for Freddie Mercury); posthumous concert appearances by a hologram of Chris (as Tupac Shakur, Michael Jackson, and Elvis Presley have profitably performed); and deep-fake renditions of Chris' vocals drawn from extant recordings by artificial intelligence that could mint brand new Soundgarden hits.

37.    When the Estate requested documentation to substantiate Defendants' lowball offer, the Partnership refused in bad faith, just as it had undervalued in bad faith.

38.    Despite the Partnership's refusal to provide additional documentation, the Estate had no doubt that the Partnership's offer was drastically undervalued.  Accordingly, in an attempt to resolve matters without litigation, and recognizing that the Partnership had exponentially more value than the Partnership would admit, the Estate made a counter-offer to purchase the entire Soundgarden Partnership (*i.e.*, the Partnership and the Soundgarden Related Entities) for a sum of ***twelve-million dollars***.  Defendants refused this offer – implicitly admitting that their own offer to the Estate was patently unreasonable.

39.    The Estate then made a second counter-offer to purchase the entire Soundgarden Partnership for ***twenty-one million dollars***, together with a willingness to potential increase the

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

offer.  The Partnership refused this offer, too: another implicit admission of its patently unreasonable offer.

40.    The Estate and Defendants have been unable to reach an agreement as to the value of Chris' interest in the Soundgarden Partnership under RCW 25.05.250.

41.    Within 120 days of the Partnership's tender of its buyout offer, the Estate brings this claim seeking a judicial determination and declaration of the buyout price for the Estate's interest in the Soundgarden Partnership, as well as related discovery (including the information which Defendants refused to voluntarily provide).  *See* RCW 25.05.250(9).

42.    Pursuant to RCW 25.05.250, the Estate is entitled to (a) a judgment determining and declaring the value of the Estate's interest in the Partnership and Soundgarden Related Entities as of the date on which Chris dissociated from the Partnership, plus accrued interest on the buyout payment; (b) discovery relevant to the Estate's buyout claim; and (c) reasonable attorneys' fees and other fees authorized by RCW 25.05.250(9), including fees of appraisers and experts, as against Defendants, in an amount the Court finds equitable.

## IV.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter a judgment in their favor and against the Defendants:

A.    Issuing a judgment determining and declaring the value of the Estate's interest in the Partnership and Soundgarden Related Entities pursuant to RCW 25.05.250, plus accrued interest;

B.    Awarding reasonable attorneys' fees and other fees authorized by RCW 25.05.250(9), in an amount the Court finds equitable; and

C.    Awarding such other relief as this Court may deem just and proper.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1

2 DATED: February 16, 2021   By: *s/ William C. Rava*
                     William C. Rava #29948

3                 Alison R. Caditz #51530
                 **Perkins Coie LLP**

4                 1201 Third Avenue, Suite 4900
                 Seattle, WA  98101-3099

5                 Telephone: 206.359.8000
                 Email: WRava@perkinscoie.com

6                 Email: ACaditz@perkinscoie.com

7                 Martin D. Singer
                 David Binder Jonelis

8                 **Lavely & Singer**
                 2049 Century Park East, Suite 2400

9                 Los Angeles, CA  90067
                 Telephone: 310.556.3501

10               Email: djonelis@lavelysinger.com
                 Email: mdsinger@lavelysinger.com

11               James George Sammataro

12               **Pryor Cashman LLP**
                 201 South Biscayne Blvd., Suite 2700

13               Miami, FL  33131
                 Telephone: 786.582.3010

14               Email: jsammataro@pryorcashman.com

15               *Attorneys for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000